### KNICKERBOCKER CONSTRUCTION CORPORATION
### v.
### The UNITED STATES.

### THREE EAST FIFTY FOURTH, INC.
### v.
### The UNITED STATES.
### Nos. 234–64, 235–64.

United States Court of Claims.

March 17, 1967.

Morris Horowitz, New York City, attorney of record, for plaintiffs.

Edward B. Greensfelder, Jr., Washington, D.C., with whom was Asst. Atty. Gen. Mitchell Rogovin, for defendant. C. Moxley Featherston, Lyle M. Turner, and Philip R. Miller, Washington, D.C., of counsel.

Before COWEN, Chief Judge, and LARAMORE, DURFEE, DAVIS, COLLINS, SKELTON, and NICHOLS, Judges.

LARAMORE, Judge.

In these actions, two corporate taxpayers seek refunds of amounts which they have paid as interest on income taxes. The facts are quite simple, and an outline of one set should adequately frame the issue.

Plaintiff, Knickerbocker Construction Corporation, filed a Form 7004 on March 15, 1959, with the District Director in Upper Manhattan, New York. This form is authorized by the statute and regulation provisions which allow an extension of time for filing a return. Int. Rev.Code of 1954, § 6081(b); Treas.Reg.

§ 1.6081–3(a). It is appropriately entitled "Application for Automatic Extension of Time to File U. S. Corporation Income Tax Return." In completing the form, plaintiff put $50,000 opposite the words "Tentative amount of tax for the taxable year" and declared an "Amount of remittance" in the same amount. It enclosed a check for $50,000 with the form. Three months later, within the extended time period for filing its final return for the taxable year 1958, plaintiff filed a completed Form 1120 showing a 1958 corporate tax liability of $221,011.53. It remitted $171,011.53 at this time, which together with the $50,-000 paid in March, totaled the final liability.

Shortly thereafter, on July 24, 1959, the District Director assessed $2,565.18 as interest on the $171,011.53. This was computed under section 6601(a) which imposes six percent interest on "any amount of tax * * * not paid on or before the last date prescribed for payment * * *." Subsection (c) provides "[t]he last date prescribed for payment shall be determined without regard to any extension of time for payment," so March 15, the return date, and not June 15, the extended return date, was used as the "last date prescribed for payment."

Plaintiff, Three East Fifty Fourth, Inc., followed the same procedure, except it showed $65,000 in its Form 7004 as the "Tentative amount of tax for the taxable year," which amount it remitted at the time of filing. This turned out to be more than 50 percent of the $120,868.26 final tax liability reported in the Form 1120 on June 15. The District Director computed $838.02 interest in the same fashion; i. e., six percent on the June remittance ($55,868.26) for the 3-month period from March 15, 1959 ("the last date prescribed for payment") to June 15, 1959 (the date actually paid).

The issue presented by the claims for refund is whether plaintiffs' actions fall within the installment payment provisions. §§ 6152(a) (1) (B), (b) (2), 6601(c) (2) (A), (c) (2) (B). If plaintiffs do qualify, "the last date prescribed for payment" of the first installment is March 15, and of the second and final installment is June 15, so that no interest runs—in plaintiffs' view—on any amount except the difference between 50 percent of the total amount reported in June on the Form 1120 and the amount of the first installment actually paid. § 6601(c) (2) (A); Treas.Reg. § 301.6601–1(c) (2) (i). Put differently, no interest runs on 50 percent of the final amount reported in June because that amount was timely paid as the second installment on June 15, and no interest could run on so much of the March installment as was in fact paid on March 15. This may be qualified by subpart (B) of section 6601(c) (2) which provides that for a "payment of any portion of the tax not shown on the return" the last date prescribed for payment shall be "the last date prescribed for payment of the first installment." Thus, if the forms plaintiffs filed in March were "returns," March 15, the payment date for the first installment, was the starting date for interest in all amounts in excess of the actual remittances (amounts in excess of those shown on the "returns"), and the District Director properly assessed interest. This is a subordinate issue which need be reached only if the installment provisions are deemed applicable.

The installment provisions apply where elected, and election may be made in conjunction with an application for an extension of time to file a return. Section 6152(a) (1) (B) permits corporations to "elect to pay the unpaid amount of such taxes [the corporate income tax imposed by chapter 1] in * * * two equal installments." Under subsection (b) (2) the two installment dates are respectively "the date prescribed for the payment of the tax," and "on or before 3 months after such date"—March 15 and June 15, if the former is the return due date. Section 6081(b) authorizes the Secretary of the Treasury to prescribe the form for corporate taxpayers who choose to automatically extend the filing

date of the return. It requires that any such form must be accompanied by a remittance of "the amount properly estimated as its tax or the first installment thereof required under section 6152." In such manner the installment payment provisions and automatic extension of time provisions meet. It is made quite explicit by the regulations under section 6152:

A corporation shall be considered to have made an election to pay its tax in installments if—(ii) it files an application on Form 7004 for an automatic extension of time to file its income tax return, as provided in § 1.6081–3, and pays 50 percent of the unpaid amount of the tax at such time. [Treas.Reg. § 1.6152–1(a) (2) (ii).]

To the same effect is regulations section 1.6081–3(a) which prescribes the Form 7004.

■ Plaintiffs here qualified for the automatic extension of time privilege by filing the Form 7004. By their own admission, however, they did not elect to pay their taxes in installments in the manner contemplated by section 1.6152–1(a) (2) (ii) of the regulations; they paid 100 percent, not 50 percent, of the tax shown on the form. In an effort to cure this defect, they have filed with their consolidated cross-motion for summary judgment an affidavit of the attorney who filed the forms. He alleges: "That in preparing the said forms, he inadvertently showed the payments made by the respective plaintiffs of $50,000 and $65,000 as the full tentative amount of tax instead of twice those respective sums, i. e., $100,000.00 and $130,000.00 respectively." Unfortunately, this allegation of intent is not a substitute for a proper election. The statute gives the privilege of election, and the regulations set out the method. §§ 6152, 1.6152–1 (a) (2) (ii). The sense of these provisions is that a choice must be made and communicated to the Internal Revenue Service. This cannot be done, as plaintiff urges, simply by making an initial payment in March and later characterizing it as "the first installment."

■ Plaintiffs suggest at another point that the regulations outlining the method of election might be unauthorized, but we think section 7805(a) authorizes the regulations under section 6152. Of course, they must be reasonable, but in our view, the regulations before us seem to be reasonable and consistent with the statutory provision they interpret and the administrative needs of the revenue laws. Perhaps we would find an election where compliance with the regulations was not absolute, for example if the amount shown as the tentative tax on the form was ambiguous, but the facts will be viewed objectively to meet the provision's general purpose of giving notice of an election to the Internal Revenue Service. The most plaintiffs can show here is a subjective intent to elect.

We could stop here, for where the installment payment provisions do not apply, the rule is clear under section 6601 (c) (1) that interest runs from the date the return is due "without regard to any extension of time for payment"—here March 15, 1959. Plaintiffs have made another argument, however, which we have reviewed and to which we now respond. For these purposes, it is assumed either that valid elections were made or that they were not required. The argument is that prior to February 1959 when regulations sections 1.6083–3 and 1.6152–1 were promulgated, Form 7004 stated the proper rule under both the 1954 and 1939 Codes with regard to interest on extensions:

Interest at the rate of 6 percent per annum will be due on any amount by which the correct first installment exceeds the estimated installment. Interest accrues from the original due date for filing the corporate return to the date of payment of the difference.

This had the effect of charging interest from the first installment date only on the amount of the underpayment of that installment as correctly determined in

the final return. The Form 7004 in effect after February 1959, and used by plaintiffs, states a different rule:

> The installment privilege is limited to the amount of tax shown on this form. Therefore, any portion of the tax not shown on this form will bear interest at the rate of 6 percent per annum from the original due date of the corporate return to the date of payment.

This has the effect of charging interest from the first installment date on all amounts in excess of 50 percent of the amount shown on the Form 7004 as the tentative tax due. Plaintiffs point out that the 1954 Code was not amended in 1959 to produce this result, so that the prior rule should be continued.

Neither section 6081 nor section 6152, which the 1959 regulations interpret, provides for interest, so to the extent that their underlying regulations set out a rule for interest, they must rely on section 6601. In section 6601(c) (2) (B), it is provided that "[t]he last date prescribed for payment of the first installment shall be deemed the last date prescribed for payment of any portion of the tax not shown on the return." We assume this is the origin of the language in the 1959 regulations limiting the installment privilege to the unpaid amount of the tax as shown on the Form 7004. Plaintiffs argue that there is no warrant for equating the Form 7004 with the "return" contemplated by section 6601(c) (2) (B), and that the 1959 regulations are accordingly invalid. Against them in this regard are two cases, one of them ours, which plaintiffs urge us to disregard and overrule respectively. Hayden Publishing Company, Inc. v. United States, 341 F.2d 646, 169 Ct.Cl. 514 (1965); P. Lorillard Co. v. United States, 226 F.Supp. 694 (S.D.N.Y.), aff'd per curiam, 338 F.2d 499 (2d Cir. 1964).

They offer as a compelling reason for us to reconsider the *Hayden* case the fact that neither the Second Circuit in *Lorillard* nor this court in *Hayden* considered the applicability of Florsheim

Bros. Dry Goods Co. v. United States, 280 U.S. 453, 50 S.Ct. 215, 74 L.Ed. 542 (1930). In that case, the Supreme Court held that a "tentative return" filed for the purpose of extending the time to file the final return was not a "return" within the meaning of the limitations period provision so that it did not start the running of the limitations period. Their argument would be persuasive if "return" could have only one meaning for all purposes. In our view, however, the meaning of "return" in different provisions will turn on the purposes and context of the setting. Thus in *Florsheim*, the Court looked to the purposes of the statute of limitations and observed that "the statute plainly manifested a purpose that the period was to commence only when the taxpayer had supplied this information [specific enumeration of income and deduction items] in the prescribed manner," and the "tentative return" fell far short of the mark. 280 U.S., at 460, 50 S.Ct., at 217.

■ The purpose of the interest provision as it relates to installment payments is quite different. In ascertaining this purpose, it is useful to start with the case of a standard corporate return timely filed on March 15. Section 6601(c) (2) (B) effectually limits the benefits of the installment privilege to the amount reported as the tax due. Interest on any subsequently determined underpayment runs from March 15, and not from March 15 on one-half and June 15 on the other. As the courts noted in *Lorillard* and *Hayden*, a decision not to equate the Form 7004 with a return would be a decision contrary to congressional intent; it would favor the taxpayer who uses the Form 7004 over the taxpayer who files the final return on March 15. 338 F.2d, at 501; 169 Ct.Cl., at 517, 341 F.2d, at 648.

An example illustrates this point. We assume the final return is due on March 15 and the taxpayer files a Form 1120 corporate tax return on that date showing a tax due of $100,000. If it elects to pay in installments, the corporation will remit $50,000 with the return and

**982**

$50,000 on June 15. No interest will accrue. § 6601(c) (2) (A). If the taxpayer determines before paying the second installment that the correct tax is greater, for example, by $25,000 (totaling $125,000), interest will accrue from March 15 on some amount of the $25,000. Section 6601(c) (2) (B) states that interest will accrue from March 15 on the *full* $25,000 because it was "not shown on the return." Now we assume the taxpayer filed a Form 7004 to extend the time period for filing the final return. The Form 7004 shows a tentative tax due of $100,000 and is accompanied by a remittance of $50,000. It is anticipated that the final return, the Form 1120, to be filed on June 15, will show a final tax due of $100,000 and will be accompanied by a final remittance of $50,000. In fact, before June 15, the taxpayer determines that the correct tax is $125,000. Interest clearly accrues on some portion of the extra $25,000 towards which no installment payments have been made. Unless the rule of section 6601(c) (2) (B) applies—i. e., unless the Form 7004 is equated with "the return"—interest will accrue from March 15 on only 50 percent of the $25,000.

Plaintiffs do not see the Code provisions as producing this result. They argue that both the Second Circuit and this court based their analyses "upon a misapprehension and misunderstanding of the law." Because of this allegation, to which the defendant did not choose to respond, we have reviewed very closely the application of the provisions, and conclude it is plaintiffs who misconstrue the law.

In conclusion, we hold that the installment payment provisions apply only when elected, and that plaintiffs did not make the election simply by filing Form 7004's. They should have remitted 50 percent of the tentative tax reported or shown a tentative tax of twice the remittance. Even if the remittances by themselves satisfied the election requirement, however, we are persuaded that the installment privilege is limited to the tentative amount of tax shown on the form in accordance with the regulations and the *Hayden* and *Lorillard* cases. Accordingly, plaintiffs' claims for refund must be denied. The defendant's motion for summary judgment is granted, the plaintiffs' cross-motion for summary judgment is denied, and the petitions are dismissed.